## SCHEDULE A

Pursuant to Fed. R. Civ. P. 30(b)(6), Sapphire is required to designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, concerning each of the following matters:

### A. **INSTRUCTIONS & DEFINITIONS**

1. "You" or "your" means Sapphire Audio, LLC or any predecessor or successor.

2. Whenever the terms "document" or "correspondence" are used herein, they shall mean any medium upon which intelligence or information can be recorded or retrieved and includes, without limitation, all written or graphic matter of every kind and description however produced or reproduced, whether draft or final, original or reproduction, including, but not limited to, letters, correspondence, memoranda, minutes, notes, films, recordings of any type, computer discs, transcripts, contracts, memoranda of telephone conversations, memoranda or minutes of personal conversations or meetings, diaries, desk calendars, telegrams, circulars, pamphlets, manuals, statements, notices, reports, telexes, e-mails, interoffice or intra-office communications, minutes of meetings, studies, books or records of accounts, bank account records, invoices, requisitions, microfilm, movies, slides, photographs, computer runs or printouts, checks, bank drafts, tabulations, charts, guides, outlines, abstracts, plans, drawings, specifications, blueprints, graphs or material similar to any of the foregoing. The term "document" also includes all copies that are not identical duplicates of the originals.

3. Whenever the terms "concerning" or "concerns" are used herein, they shall mean consist of, refer to, reflect on, arise out of or be in any way or manner legally, factually or logically connected with the matter discussed.

4. Whenever the term "communication" is used herein it shall include all inquiries, discussions, conversations, negotiations, agreements, meetings, telephone conversations, letters, correspondence, notes, telegrams, telexes or other forms of communication including, but not limited to, both oral and written communications.

5.  Whenever the term "Mark 2" is used herein it shall mean the audio speakers as referred to in Section II, Paragraph 1 of Defendant/Counterclaim Plaintiff Sapphire Audio LLC's Supplemental Disclosures Pursuant to Fed. R. Civ. Pro. 26(a)(1).

## B. SUBJECT MATTERS

1. The costs incurred by Sapphire in repairing the defective Mark 2 speakers manufactured for Sapphire by Sunfield.

2. Sapphire's revenues, profits, expenses, losses, assets, liabilities, sales, balance sheets, bank account statements, accounts payable, accounts receivable and financial audits from 2004 to present.

3. Amounts owed to Sapphire's creditors and the identity of each creditor to whom any amount is owed from 2004 to present.

4. Money, assets, property or any other thing of value paid or transferred, directly or indirectly, to any Sapphire officer, director, employee, independent contractor, consultant, member, or investor of or in Sapphire from 2004 to present.

5. Sapphire's communications with or from, agreement with, purchase order to or from, confirmation of order or sale to or from, proposed agreement with or from, or offer to or from any manufacturer, assembler or supplier of speakers from 2004 to present.

6. All information contained or disclosed in the "Documents and Tangible Things in Sapphire's Possession, Custody, Or Control That Sapphire May Use To Support Its Claims And Defenses" identified in Section II, numbered paragraphs one (1) through eleven (11) of "Defendant/Counterclaim Plaintiff Sapphire Audio LLC's Supplemental Disclosures Pursuant to Fed. R. Civ. Pro. 26(a)(1)."

7. The design of the Mark 2 speakers.

8. The testing of the Mark 2 speakers.

9. SGS's inspection of the Mark 2 speakers.

10. The scope or nature of the services SGS provided to Sapphire, and terms of the relationship between SGS and Sapphire.

11. Repairs of the Mark 2 speakers, including but not limited to any payments made by Sapphire to third parties to make repairs.

12. Sapphire's receipt of shipments of the Mark 2 speakers from Sunfield or SGS.

13. The tracking or shipment of the Mark 2 speakers beginning with issuance of purchase orders by Sapphire through delivery to Sapphire's inventory, and through delivery, sale or transfer of the speakers by Sapphire to any third party.

14. All sales of the Mark 2 speakers by Sapphire and Tweeter.

15. All returns of the Mark 2 speakers to Sapphire and Tweeter.

16. The Mark 2 speakers manufactured for Sapphire by Sunfield.

17. Why Sapphire has not paid Sunfield for all outstanding purchase orders including, but not limited to, purchase order numbers 52401, 120710, 120715, 120721 and 120723.

18. The development of new test products, including subwoofers and related stock as per Sapphire purchase order 52401, and all communications regarding this purchase order, or the cancellation, payment or credit of this purchase order.

19. The dissolution of Sapphire, including all distributions or allocations of assets and liabilities to any person or entity in connection with that dissolution.

20. Sapphire's communications with shareholders, accountants, taxing authorities, government agencies or any other party concerning the dissolution of Sapphire.

21. The nature and terms of each and every business relationship or agreement between Sapphire and Tweeter.

22. All entities in which Tom Devesto and Tweeter both have an equitable or other ownership interest.

23. Communications with Tweeter regarding all reasons why Tweeter ceased purchasing products from Sapphire.